I represent Roberto Miguel in this appeal. Mr. Edwards here represents the co-defendant Brice and Jose. This case is the criminal case that arises out of the exact same circumstances. Now are you going to divide time? Mr. Edwards will probably take about 3 or 4 minutes and then if we have any left we'll try to get a little rebuttal in. Why don't we set what 15 minutes on the clock then so you'll have some guide? I think that would be good. Alright we have two of the issues, five were presented in our brief, but these two apply to both defendants. And the first issue is this, that the trial court erred when it responded to an objection made by the government during closing argument by denying the defendants the opportunity to present in argument their theory of the defense. And that theory was this, that a non-participant in the robbery or burglary, namely Donald Calarudo, fired the gun. And then the court went further and instructed the jury that as a factual matter no evidence supported this theory. Now this then in effect directed a verdict on the second element of the offense of felony murder. And when the court later instructed the jury, this is what the court said in relation to that second element of the three elements or four elements of felony murder that were instructed upon. Second, a defendant or another participating with the defendant in the attempted burglary or robbery killed the victim John Latcham in furtherance of the attempted robbery or burglary with all of you agreeing as to the underlying felony. So when the district judge in this case, which was not Judge Mulway who decided the civil case, but Judge Gilmore who presided over the criminal trial, instructed the jury, what she said is the jury is to disregard the statement made by Mr. Wolfe with respect to the allegation that Mr. Calarudo could have been the gunman. There's no evidence before the court that Mr. Calarudo was the gunman. Now as a matter of fact, that's simply not true. There was circumstantial evidence from which inferences could be drawn that indeed Mr. Calarudo was the gunman. And so what the court did by telling that evidence Yes, Your Honor. The significant, the most significant piece of evidence was a shell casing which was found on a sidewalk. And the shell casing was located 114 feet from the place where Mr. Latcham was when he was shot. And if you imagine this from the place where Mr. Latcham was shot, which is on a deck where the cabin is 32 inches above the ground level. Between that location and the location of the shell casing, there is a very large tree. And the tree is about halfway between the shell casing and the place where Mr. Latcham was. The government's expert testified that the gun that was used in this case, which was a .22 caliber rifle, semi-automatic, would eject the cartridge after it was fired somewhere between 12 and 5 feet to the right and perhaps slightly to the rear. But definitely the ejection mechanism would eject the shell that the place where the shot was fired was somewhere about 5 to 12 feet to the left of where the shell casing was. Now there was disputed evidence about whether that was the location where the cartridge or the shell casing came from or whether it had been somehow moved there or kicked there or inadvertently put there. But there's no denying where the shell casing was found. The government witnesses were asked to testify about various things. And at least several of them put Mr. Miguel, at the time the shots were fired, right by this tree. In other words, about 40 feet forward of the shell casing in the direction towards Mr. Latcham. And this is a large tree with branches. And at least one of the witnesses said that Mr. Miguel, at the time the shot was fired, was in between the tree and where Mr. Latcham was. In other words, further forward from the location of the shell casing. Now the testimony of Mr. Calarudo himself placed him in a location quite near the shell casing when the shot was fired. In addition to that, Mr. Calarudo's own argument was that he owned the gun. He brought the gun. He brought the bullets. And he even testified that he loaded the gun on the way to the recreation center. So... Yeah, but all of the testimony pointed to Miguel. The direct testimony pointed to Miguel. That's true. And you were not precluded from arguing that it wasn't he who pulled the trigger. What you were precluded from saying who specifically was. Well, that, I think, is a distinction without any difference in the context of this case. Let me pursue that a minute. Because if I understand the felony murder theory, it doesn't make any difference who pulled the trigger. That's exactly not true. So long as it was reasonably foreseeable that one of the people in the scheme would do so. Is that not true? The second part makes it true. Oh, sure. It has to be a participant in the scheme. But Mr. Calarudo had testified in the government's position at trial was that he was not a participant in the scheme. So if he is the one who fires the shot... He had done something to take himself out of the robbery? His testimony was he had nothing to do with the robbery. And the government took that view as it presented the case to the jury in the trial. That he didn't go up on the porch? He didn't go on the porch. And he was a non-participant in the robbery and the burglary. So you could not infer from the fact that he was part of the pact who had left to go rob and shoot someone and that he had climbed onto the property. And two of them went up on the porch. That he was there to do the same thing. That is, rob and shoot. That's not the position the government took, Your Honor. They didn't take that position at trial and they haven't taken it in this appeal. Their position has been consistently that Mr. Calarudo was a non-participant in the robbery and burglary. He was there. And that was their position with respect to their other witness, Mr. Tapawan, and their immunized witness, Mr. Afong. That the robbery and burglary scheme was a scheme of the three named defendants. And nobody else was involved in it. So I think that to say in the context of this appeal now, if they say it, which I doubt they'll say, that somehow Calarudo was a participant in the burglary and robbery. So it didn't matter if Calarudo did the shooting as opposed to Miguel. It just completely turns the record around. And the curious thing here is that the objection the government made, which brought this issue before the district court, wasn't that. The district court was responding to an objection, and this was the objection. Mr. Johnson said, the government's objection is that Mr. Wolfe has no good faith basis to make that argument because he himself knows that his client admitted to possessing the gun at the time that the shot was fired and to firing the shot that killed Mr. Latchett. And this was based on the government's assertion, essentially, that because Mr. Miguel had made a statement, which we've shown in our reply brief was far more ambiguous than the government characterized it in its answering brief, a statement which was never introduced into evidence that somehow I was precluded from making an argument other than that my own client shot Mr. Latchett because I knew of a statement my client had made, which the government didn't choose to put into evidence, in which he said that, among other things. The district court then didn't respond to that argument or that objection on that ground. It didn't say, that's true, Mr. Wolfe. And why would the court have said that's true, Mr. Wolfe? Because that would be an absurd position to take. The court knows that people put in evidence in cases or leave it out for tactical reasons. The court knows that trials go forward in front of juries when evidence has been suppressed, and no one has ever suggested that a statement that the government didn't use would bind me to some position. And the fact of the matter is this. If the government had put Mr. Miguel's statement into evidence, it would still have been entirely proper for me to make the argument that was attempted to be made here, even if his statement had been in evidence, which it wasn't. I take it, then, that that's, and I might say that I checked with my office in Idaho this morning. We don't have a reply brief from you in this one? Not only did, it was a joint reply brief. All right. Well, that's for another time. We need to check the docket. But I don't have it, and my law clerk didn't have it back in, and Judge Levy didn't have it. This is very distressing news. It was a brilliant brief as well. In fact, it was a winner. Well, I take it, then, without having that brief, that what you've just said is your answer to the government's harmless error argument, that in a felony murder case, it doesn't matter who fired the shot. You're saying that it matters if it's a non-participant. It was not a participant. Therefore, if he fired the shot, it wasn't felony murder. That's right. And the other thing we've said in response to the harmless error analysis, this is not a harmless error case. This is a structural error case. And because what we have is similar, I would submit, to what this Court has dealt with in the two habeas cases, Condi v. Henry and Powell v. Galazza, which was decided, again, yesterday on remand from the Supreme Court. And what we have is structural error. The judge precludes the argument from being made, instructs the jury in a fashion that is tantamount to an instruction on one of the elements. And so we have a verdict that is not the verdict of the jury, because the Court has rendered part of the verdict by its instruction. So we submit that even though we would prevail on harmless error analysis, this is not a proper case for harmless error analysis. This is a case that fits within that limited number of cases where the Court has to say, because of the way the trial proceeded structurally and procedurally, there has to be a reversal based on what happened. I see the yellow light is on, so let me give — — a reassurance here. Not only is the statement of your client not in the record of this trial, and certainly was not before the jury, the assertion that you made in connection with the remand or waiver or whatever you call it from the juvenile court, that is not part of this record either, is it? You're right. It's not. And in addition to that, Your Honor, I don't think as a factual matter it's true that — Well, I understand that. But I understand your argument there, that you simply proceed on the assumption in that court that the charge is true, and the considerations going into the decision that the court has to make are separate and apart from the merits of the — I understand that argument, but I just wanted assurance that it's not part of the record. Well, I will say this, Your Honor. It might be part of the record in this sense. Which judge decided that issue? That was Judge Gilmour. But it could be viewed as being part of this record because I think when in mid-trial it occurred to me that we had an that I may have requested the court to take judicial notice of what had happened in the transfer. So it might actually be part of this record in that sense. In any event, it's not much of a problem because it's a public record to the extent it was. Yes. And the full record is somewhere among the records of this court, actually. All right. Thank you. Just leave it the way it is. Your Honors, I just wanted to point out on behalf of Mr. Jose that he certainly couldn't be bound by the statement that was given by Mr. Miguel and couldn't be bound by a private proceeding dealing with the juvenile adjudication issue. The government argued in its brief that nobody had telegraphed the fact that the defense of non-participatory shooter was going to be raised, even in opening statements. And the record doesn't reflect that to be the case. Mr. Wolf's opening statement was more technical. There will be evidence which you need to pay particular attention to which will establish where things happened. Pay attention. And you're going to hear from people who are going to try to lay off this shooting on his client, Mr. Miguel. Then my predecessor, I was not trial counsel, as the court's aware, got up and argued much more specifically about the factual issues. And in the in the argument, he talks about the fact that you're going to need to pay attention to who was where, when and why. And you're going to need to pay attention to the fact that it was Donald Coloruda's gun. Donald Coloruda loaded it down. Coloruda was a person who brought the gun in the first place. He owned it, et cetera. So my predecessor at trial in opening statement made it very clear that there was going to be some evidence about Donald Coloruda being the guy with the gun and the bullet. Now, your honors know and will agree with me that he didn't have to make an opening statement. It didn't matter. The question is, was there evidence in the record from which a jury could infer that a non-participant shot Mr. Latcham? And Mr. Wolf's brief in opening is carefully lays out all the transcript references to the circumstantial evidence. And it's true. The direct testimony of the government's witnesses laid off the blame on Miguel as the shooter. But Mr. Wolf's cross-examination was pretty darn good. And he showed Coloruda, I believe, to be a fairly vociferous liar in many material respects. So a jury should have been given the opportunity to say, wait a minute, I don't buy Coloruda's story. It was his gun. It was his bullet. It was there. He says he wasn't a participant. Miguel didn't do the shooting because Miguel wasn't placed close enough to the shell casing. Judge Gilmour took that opportunity away from the jury and directed him there wasn't that evidence in the record. That was structural, your honors. And the case should result in reversal. But if the jury were to conclude that he was a participant, then isn't that? Well, if the jury wasn't given the opportunity to do that, Judge Reimer, the jury was precluded from making any such determination by Judge Gilmour's instruction. My impression from Mr. Wolf's argument was that there is no basis for deciding that he was a participant. Well, that's correct. Well, look. Then I don't understand what the error is. Look, it was up to the jury. My argument is the jury had the right to determine whether or not Coloruda was a participant, whether the government said he was or was not. OK, but it was the jury's right to make that decision. It was not proper for Judge Gilmour to say there's no evidence to the effect that Coloruda was the shooter. And it wasn't Judge Gilmour's prerogative to limit the only defense that was sellable in closing argument to prevent that defense from being asserted by both counsel in the case. So that's my position, your honors. Any questions? Just a single question. Counsel, on behalf of the defendant, Jose, did not undertake to make the argument. Am I right? He was precluded from doing so by the judge's instruction. He was present. Well, what I mean is he took it to mean that he couldn't make it because he had just heard his his colleague being ruled against. Well, he never forced the court to rule again. Am I right or not? I think you're right, Judge. That's all I need to know. There was a sidebar. There was a sidebar discussion. And my impression was that counsel understood that they were not going to be permitted to make that argument. He recognized lightning. Well, and Judge Gilmour, I think, followed the practice that if one one lawyer objected and it was sustained, then the other lawyers didn't have to. I think that's a good point.  And if counsel didn't understand that, then the judge would say, okay, I understand you. You showed a great deal of restraint in not dragging Mr. Wolf away from the lector and I'll give you both some time and rebuttal. Please, Your Honor. Good morning, Your Honor. My name is Craig Nakamura. With me is Ronald Johnson who was trial counsel in the case. I believe that the court has framed the issue and that issue is, for the harmless error analysis, was Calarudo a participant so that even if they had been able to argue he was a shooter, the jury would have reached the same result? And Mr. Wolf is absolutely 100 percent wrong that the government's position at trial was that Calarudo was not a participant. In fact, we had given the defense, we had disclosed to the defense the fact that we had charged Calarudo in a juvenile proceeding with conspiracy to commit the attempted robbery and burglary and also the fact charged him with the attempted robbery and the attempted burglary. And the defense used that to cross-examine Mr. Calarudo at trial. So it's absolutely false that we took the position that Calarudo was not a participant. Secondly, Your Honor, the evidence that came out at trial. Well, as a matter of fact, did he testify that he was not? Your Honor, he testified that he was part of the gang. I understand. But did he testify that he was not part of the conspiracy? He did not. He never said that. He never disassociated himself from the enterprise of either committing the burglary or the robbery? He testified that he was not one of the people who went up on the porch, but he never said that he was not part of the group. No, I want to be specific with you now. I want to know if it was his testimony that he was not part of any conspiracy or plan to rob or commit burglary. I don't believe so, Your Honor. You don't know? No, I've read his testimony. My recollection in reading his testimony, he never said that he was not a participant in the crime. And what I'm referring to is the plan and the conspiracy and the robbery. Correct. All right. And I want to point out to the Court that there was substantial evidence in the record, undisputed, that he was a participant in the burglary and robbery. In fact, all the things that Mr. Wolfe tries to argue that says he was the gunman shows that he was a participant. All right. Now, is it your belief that this Court should allow for the proposition that, in fact, he may have fired the shot, and that therefore, and that based upon your assertion here, that the jury may have found that he was a co-conspirator in the plan to, in the felonies, and therefore this conviction can stand in the spite of your objection, that is, the government's objection and the Court's instruction? Correct. So in spite of that instruction and in spite of that objection, we could reconcile ourselves to the fact that the jury found that in spite of that instruction, the jury found that this particular individual witness for the government was the actual person who fired the weapon and killed the decedent, and this conviction should stand? My position is this, Your Honor. I don't believe we have to argue the jury would have made that finding. I think our position is that the error would not have affected the jury's verdict for three reasons. There are three options, assuming the harmless error test, as I understand it. Well, first of all, I take it you're conceding it was error? I think for purposes of this argument, yes, Your Honor. Well, and for all other purposes? Well, we do have an argument that the evidence was so tenuous as to the relationship between Calaruda and the bullet. All right. I believe that if the Court finds that there was sufficient evidence linking Mr. Calaruda to a bullet, that Mr. Wolf should have been able to make that argument. But I think the harmless error analysis, Your Honor, is this. As long as a participant committed the shooting, the defendants are guilty. Now, had Mr. Wolf been able to make the argument, one of three things would have happened. Under any scenario, the result would have been the same. One, they would have disregarded the argument and still believed that Miguel was the shooter and convicted. Secondly, they would have believed the argument and believed that Calaruda was the shooter and convicted. And third, they may not have been able to decide. Either it was Miguel or Calaruda. But under the instruction, the precise identity of the shooter is not an element and not required for felony murder. As long as they believe that one of the two guys did the shooting and that both of them were participants, the same result would apply. But I think, and I don't have the benefits of the excellent reply brief, but it seems to me, from the arguments that came out in the opening briefs, to be that Calaruda is with the group that goes over to rob people. But he stops short of the cabin with one of the others, Tepoan? Tepoan. Yeah. And they stop short of the cabin at this place maybe 100 feet away, 114 feet away, wherever it is. And do not approach the cabin. That's what he said. The others go up to the cabin, and they get frightened off, and then the shooting occurs. Now, if Calaruda is the shooter, it seems to me you have an argument. It may not be conclusive, but there's an argument that he had withdrawn from the effort, and therefore the shooter was not part of the group. I think the fallacy with that argument is this. I mean, obviously the evidence we put on was that Miguel was, in fact, the shooter. Right. But if the jury believed that Calaruda was the shooter, they necessarily would have found that he was a participant, because the jury was instructed that fleeing from an attempted robbery or burglary to avoid apprehension or escape is part and parcel of the attempted robbery and burglary. But it hadn't occurred to him. He was not fleeing. He was dissociating. No, no, no. But the shooting occurred in connection with the group leaving the scene of the crime. And the jury was instructed that leaving the scene of the crime, a shooting in connection with that is part of the attempted robbery and burglary. So if the jury had accepted Mr. Wolf's argument and believed that Calaruda indeed was the shooter, our position would be that certainly the jury also must have or necessarily would have concluded that he was a participant. Even though you could, in looking at the facts most favorable to Mr. Wolf's argument, you could argue that Calaruda had withdrawn from the mob. He's standing back by the tree. He sees the mob get in trouble because the occupants of the cabin have been alerted. And so he is firing then to protect them. He reinserts himself into the mob. Is that correct? I don't think there's any evidence that he withdrew. Certainly he stayed in the area. Well, certainly, but I don't think that what you have to have is the argument. That's the point. We don't have to say that it has to be conclusive. What the defense is saying here is they were deprived of the ability to make the argument. And so everything else is speculative from that point. I think that the question is, is that would a reasonable jury, faced with the evidence that they had, had the judge not made the mistake, would that have affected the outcome of the case? And our position is that had the judge not precluded closing argument, the way the jury would have had the case is, okay, maybe it was Calaruda who was the shooter. Now, based upon the evidence at trial, would that affect the outcome? Again, I think the government's parsing out what the different scenarios would be is the same. And if they believed Calaruda was the shooter, they certainly would have believed, given the context of the shooting, that necessarily he was a participant in the attempted robbery and burglary. But doesn't that get you precisely to Mr. Wolf's point about structural error? In other words, structural error leaves you at a point where you're so uncertain about what goes on that you simply can't go forward to get to harmless error. I don't believe that. I'll address structural error, but there's one other point about the evidence of his participation, and that is that there's no dispute that it's his gun, and that prior to going across to the rest camp, Mr. Calaruda is the one who loads the gun with the bullet that ultimately kills Mr. Lachem, and he hands that gun to Mr. Miguel. Now, that, Your Honor, is aiding and abetting the offense. In other words, he is a participant by virtue of his aiding and abetting the attempted burglary and the robbery in the sense that he's part of the gang, he knows what they're going to go over to do, he gives them the instrument that they're going to use for the robbery. In that context, even without the shooting evidence, I believe the jury would clearly have concluded that he was a participant in the attempted burglary and robbery and that he had not withdrawn. He, in fact, went with them to the camp, he stayed in close proximity to where they were, and then after the victims came on the porch, he fled with the gang and stayed with them afterward. Well, I think that would have been a good argument if it had been made, and I'm not convinced that on a harmless error basis that what we have here is reversible, but I think the structural error problem stands in the way. Let me address that, Your Honor. The Supreme Court cases on this point are very clear that only a very limited class of errors that totally affect the fundamental nature of the trial are considered structural errors. Everything else, errors which I would argue are analogous to this situation, the exclusion of evidence, an erroneous conclusive presumption, all those errors are subject to the harmless error review. And I think in this case, our argument is that this is no different than the exclusion of evidence. Say the defense wanted to put on evidence that Calagouta was the shooter and for some reason the court didn't let them put that evidence on. On a Supreme Court precedent, that would be subject to harmless error review, even though the result would be the same. The jury wouldn't have that evidence before them. They would not be able to consider the implications of that evidence, and yet the court would look at, okay, did the deprival, did that error affect the outcome of the case? So that's one example of, I think, why analogously this should not be structural error. The second type of situation is a conclusive presumption instruction. From this fact, you must conclude, and I think the Supreme Court case was, if somebody doesn't return their rental car within 14 days, you have to conclude, conclusively presume, they intended to steal. And, of course, now that's bad because the jury cannot consider other facts that may have implicated or impacted upon the mens rea issue, but that is not structural error. There are only a very limited number of cases that have found structural error, and it's mostly in the process, a biased trial judge, a defective reasonable doubt instruction. Yes, but we have held at least twice that precluding argument on an element is structural error, and Mr. Wolf, in his comments, argued that this was going to an element. What is your position on that? I think that's wrong because the identity of the shooter for the felony murder charge is not an element of the offense. Mr. Wolf is right. This court has, in situations in which the court has directed verdict on a central element of the crime, has found that that is structural error. But in this case, as we argued, the identity of the shooter, which is the only thing he wanted to argue, he wanted to say you kind of have a choice between Miguel and Calarudo. It's Calarudo. Our position is that's not an element of the felony murder. The identity of the shooter is not an element. The fact that the shooter was a participant is an element. But when you get to final argument, I think we have at least one case that says that you can't prohibit the defendant from telling the jury the theory of the defense. There's two cases in which the court has found structural error. One is a case in which the most recent case in which the offense was failing to appear at sentencing. And the issue was whether the defendant had the intent to evade the court process. And the defendant testified that he didn't show up because he was scared of being killed in jail. And the judge instructed the jury, one, that's not a defense to intent to evade the court process, and two, that the defendant had admitted that, in fact, he intended to evade the court process. And the court found that by directing the verdict on that essential element, they took the essential element consideration away from the jury, and that was structural error. The second case was a case in which the charge was kidnapping with intent to rob. And the judge did three things in that case. One, it told the defense lawyer he could not argue that the defendant didn't have the intent to rob. Secondly, he had a defective jury instruction on the mens rea intent. And thirdly, he wouldn't let the defense get a lesser included instruction on that charge. And Ninth Circuit says those three things combined was structural error. Now, here, my argument, Your Honor, is that the defense and the government put on their case. All the evidence that was relevant to the case was before the jury. So the harmless error assessment in this case can be done. And the assessment is, okay, if you had allowed the defendant to do what he wanted to do, make that argument, would that have affected the outcome of the case? And our position is, is that given the circumstances of this case, the answer to that is no. It would not have affected the outcome of the case. Well, would you agree with me that in order for the jury to find either of these two defendants guilty, it had to find that one of the participants in the felonies, either the burglary or the robbery, attempted robbery or burglary, was the shooter? Correct. And if it is the fact that the witness, Calarudo, in fact shot the gun, the weapon, how could this jury have made that finding in the face of what the judge said to them? Members of the jury, there is no evidence that this man fired the shot. Right. Now you're saying that, well, if he fired the shot, it still makes these two defendants guilty if he was a member of the conspiracy participating in the felonies, and therefore we have a guilty verdict, which the jury could have found if they'd have found that this man fired the shot in spite of what this court told them. Right. Now, where is the jury verdict of guilty if that turns out to be, or by chance is the fact that he fired the shot? The jury's verdict would be that a participant in the robbery and attempted robbery and burglary killed the victim. They had evidence that Calarudo was a participant in the burglary and robbery. They had evidence that Miguel was a participant in the burglary and robbery. Our theory of the case obviously was not that Calarudo was a shooter, and I'm not saying that our harmless error argument depends upon the jury making that finding. My argument is that the harmless error analysis is what effect did the error have on the outcome of the case. The outcome of the case was a guilty verdict. My argument is that even if the jury had accepted Mr. Wolf's argument, and there was no error, any error that was complained about was cured, the outcome of the case would be the same because the jury, under the evidence of trial, would have either found Miguel was the shooter, which is what they did, that Calarudo was the shooter, in which case he would still be guilty because necessarily he was a participant, or they couldn't decide which one it was. If it was either Calarudo or Miguel that the jury found was the shooter, they still would have convicted because he would have been a participant. A participant would have done the killing. Let me just ask you to assume for a minute that Calarudo was in truth, in reality, the shooter, and there was no other. How does this break stand? Because the jury had the error is harmless. Because the jury could have guessed that somebody else did it? The error stands because the jury does not have to make the finding for the guilty verdict that Calarudo was the shooter. All they have to do is find that a participant was a shooter. So if they believe that Calarudo was the shooter, as long as they found that he was a participant, the verdict stands. So you believe, then, that this verdict should stand in spite of what might be the truth, that this man fired the shot because there was evidence that somebody else did, and the jury could have found that somebody else did, so it's okay. That false verdict would be okay. Our argument is that based upon the evidence, which was undisputed as far as we're concerned, Miguel was the shooter. Everyone who testified at trial said Miguel had the gun, he was on the porch, he fired the shot. After the fact, he admitted to the witnesses he was the gunman. So our argument is that the clear evidence was Miguel was the shooter. The only issue is what effect did the court's error in precluding argument have on the result? And we say that the effect would not have affected the verdict because either they would have found Miguel was the shooter, if they believed Calarudo was the shooter, they still would have found he was a participant, or if they couldn't decide, they would still have found a participant in the attempted burglary and robbery committed the shot, fired the shot. Any participant other than Calarudo, right? Well, the only argument that the defense made was it was Calarudo. But our view is that they could have found any participant. Including Calarudo? Including Calarudo. That would be sufficient to support the verdict. In the face of the instruction. Correct. Okay. I guess my argument is that you're assuming that to reach the verdict, the jury had to say, we know who the shooter was. No, I'm not. I'm saying that they had to find that it was a participant. And the only participant, according to your version, that is at issue here is Calarudo. And I'm saying to you that under this instruction, how could the jury find that it was him? It had to find that it was somebody else. And they had to assess the probabilities or possibilities of somebody else. And the only person on the scene that they had to exclude, according to the court's instruction, was Calarudo. Now, if it is the truth that he fired the shot, this verdict is false. And you're saying it's okay because you're so sure that that's not the fact. That it's okay? I'm saying that under the harmless error analysis, I am so sure that the exclusion of the argument didn't affect the ultimate outcome of the case. We understand. All right. All right. Any other questions, Your Honor? Any other questions? No. Thank you. We'll give the appellants three minutes since we've kept you over. Yeah. Thank you. Let me just. Your Honor, I'll give Mr. Wall two of those. All right. It occurred to me that this isn't really the argument. The joint reply brief could be brought up here. I think what probably happened is it went. This case has two numbers. It's in the file with Mr. Jose's appeal because it was a joint reply brief, and that's why it never got to the court. All right. I guess the real question is who gets to decide these issues as to what happened. And our contention is that it should be the jury and not the court. And it's a little, I think, hard on the trial judge for the government to concede the trial court's error when it's the government itself that inflicted this error into the record. They made the objection. They requested the court to intervene at this point. And now they say, well, it wouldn't have mattered anyway. The argument was cut off and the judge gave the instruction. And so the rest of the argument never could have been made. But the rest of the argument was that if there was a reasonable doubt as to whether Cala Ruta was the shooter or if he was in fact the shooter, there was evidence from which the jury could have inferred that he was a non-participant or had stopped participating. And so then the argument really was that if a non-participant does the shooting for some reason of his own, unconnected to an attempted burglary or attempted robbery, then the defendant, Miguel and the defendant, Jose, are not guilty of felony murder. Now, that, it seems to me, brings us straight within the rule of the Condi case. If the court was dealing with the Netter decision, the Supreme Court, and this court had not said anything about what Netter means or what the limited list is that Netter refers to, the government's argument might be a little more well taken. But in Condi and in Powell v. Galazzo, this court dealt specifically with preclusion of a final argument on the theory of the defense, and in addition with an instruction on an element. And while this court's instruction here did not purport, was not framed as, I'm now telling you, ladies and gentlemen of the jury, what the elements are, as a factual instruction as to what the evidence was, it amounted to an instruction on the second element of felony murder. And I might say that the court did not in any way qualify its remark to suggest that it was a mere comment on the evidence or something that would be within the reasonable bounds of a district court's comment. This was an instruction of the jury of the weight and effect of the evidence. And so we think those two factors make this a structural error within the meaning of Condi and the meaning of yesterday's decision in Powell v. Galazzo. Thank you. You left seven seconds. I'll give you two minutes. I don't need two minutes, Judge, but thank you, Judge Nelson. I wanted to point out that in the opening brief of Miguel, the discussion of the transcript references of Calarudo's withdrawal and pulling back is in pages 12 through 14. So the evidence is there and the transcript references are there for you to review if you'd like. And I didn't get the government's argument about the fact that the jury could have found that Calarudo was the shooter anyway and reached this guilty verdict because the jury was instructed that there was no such evidence. And Mr. Wolfe's opening brief with transcript reference after transcript reference lays out the circumstantial evidence upon which such a conclusion could have been drawn had the jury been permitted to draw it. I think that this case fits squarely within Powell v. Galazzo and the Corella case, as well as Condi, for all the reasons that the court stated just before its conclusion, talking about why Sullivan was decided the way it was. Reversal should occur here, Your Honors. All right. Thank you. Appreciate the argument. Just to cover ourselves twice, would you check with the clerk's office to make sure that we have that joint reply brief? And I'll do the same. Yes. And if either of us runs into trouble, we'll tell the other so we can make sure we get it. Very well. All right. Thank you. The case just argued to be submitted, and the court will be in recess to debate. All rise. The case is submitted.
judges: Leavy, Rymer, Tg Nelson